Bettysu BENNETT, Appellant,

v.

Burt E. NORTHCUTT, Appellee.

No. 19005.

Court of Civil Appeals of Texas, Dallas.

Nov. 11, 1976.

John D. Crawford, Dallas, for appellant.

Green, Gilmore, Crutcher, Rothpletz & Burke, Jerry C. Gilmore, H. Wayne Meachum, Dallas, for appellee.

PER CURIAM.

In this action to change the name of a minor child, the trial court denied petitioner's motion to include in the statement of facts the records of two interviews with the child by the judge in chambers. At the first interview the court reporter and both counsel were present. At the second interview the judge and the child were alone. After the trial court had denied the change of name, petitioner requested the reporter to prepare the statement of facts and submitted to the court a written request that the statement of facts include the reporter's record of the first interview and a narrative statement by the judge concerning the second interview. The request was denied by written order. This ruling is assigned as error on this appeal.

We agree that the trial court erred in denying this request. Petitioner is entitled to a complete record of the proceedings in the trial court. Cf. Robinson v. Robinson, 487 S.W.2d 713, 715 (Tex.1972); and Wilkinson v. Evans, 515 S.W.2d 734, 736–37 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); Whatley v. Whatley, 493 S.W.2d 299, 301 (Tex.Civ.App.—Dallas 1973, no writ); and cf. also Tex.Family Code Ann. § 14.07(c) (Vernon 1975), requiring the court to cause a record to be made of an interview in chambers in a conservatorship proceeding.

We need not, however, reverse the judgment on this ground. We are authorized by Tex.R.Civ.P. 428 to direct preparation and transmission of a supplemental record if anything material has been omitted from either the transcript or the statement of facts. We do not know whether the omitted matter is material, but we cannot pre-

sume that it is immaterial, since we must examine the entire record for the purpose of reviewing the trial court's exercise of discretion in deciding whether the child's name should be changed.

The record now before us gives no indication of why petitioner's request was denied. If the trial court considers that any matter in the interview should be treated as confidential, the proper course is not to exclude the confidential matter from the statement of facts, but to make an appropriate order for the guidance of the attorneys and other officers of the court.

Accordingly, we direct the trial court to grant appellee's request for the court reporter's record of the first interview with the child and also for a narrative statement of the second interview, and to include this material in a supplemental statement of facts to be certified and transmitted in accordance with Tex.R.Civ.P. 377. Immediate attention to this matter is requested on the part of the judge, the court reporter and counsel, since our decision on the merits of the appeal awaits completion of the record.

## GUITTARD, Justice.

This appeal is from denial of an application to change the name of a nine-year-old girl. The mother, after divorce and remarriage, filed the application to change the child's surname to that of the mother's present husband. The father appeared and opposed the change. After a nonjury trial the juvenile court denied the change, and the mother appeals. We hold that the court did not abuse its discretion.

The question of abuse of discretion is presented by appellant's first point. Appellant asserts that she has shown the change to be in the best interest of the child, within the terms of Tex.Family Code Ann. § 32.04 (Vernon 1975):

> After a hearing, for a good cause shown, the court may order the name of the minor changed as requested in the petition if it finds that the change is in the best interest of the minor.

This provision has not been construed in any reported decision. It replaces the following provision of former Tex.Rev.Civ. Stat.Ann. art. 5929 (1925):

> The judge of said court, if the facts alleged and proven satisfy him that such change will be for the benefit and interest of the minor shall grant authority to change his original name and adopt another.

Under the old statute it was held that a protesting father has a protectable interest in having his child bear his surname. *Newman v. King*, 433 S.W.2d 420, 423 (Tex. 1968). It was also held that the action of a trial court in granting authority for the change of the name of a minor was not subject to review on appeal except on a showing of abuse of discretion. *Ex parte Taylor*, 322 S.W.2d 309, 312 (Tex.Civ.App.— El Paso 1959, no writ). The same standard of review was applied where the application for change of name was denied. *Plass v. Leithold*, 381 S.W.2d 580, 581–82 (Tex.Civ. App.—Dallas 1964, no writ).

We do not think that the standard of review in such matters has been changed by repeal of article 5929 and adoption of § 32.-04 of the Family Code. Although the code eliminates the expression "if the facts alleged and proven satisfy him that the change will be for the benefit and interest of the minor," and provides instead "if it finds that the change is in the best interest of the minor," the controlling consideration under either provision is the best interest of the minor. Section 32.04 cannot be interpreted as narrowing the scope of the trial court's discretion since it provides that on such a finding the court "*may* order the name of the minor changed," whereas article 5929 provided that if the facts proven satisfy the judge, he "*shall* grant authority for the change." On the other hand, we do not construe the usually permissive "may" to broaden the trial court's discretion so as to authorize denial of the change without regard to the evidence.

Under the new statute, therefore, as well as under the old, the standard of review is "abuse of discretion." This concept is not easily defined. *Brazos River*

*Conservation & Reclamation District v. Harmon,* 178 S.W.2d 281, 292–93 (Tex.Civ. App.—Eastland 1944, writ ref'd w.o.m.). It does not imply bad faith or intentional wrong. *Chamberlin v. Chamberlin,* 44 Wash.2d 689, 270 P.2d 464, 469 (1954); *State v. District Court of Jefferson County,* 213 Iowa 822, 238 N.W. 290, 294–95, 80 A.L.R. 339, 347 (1931). However, it is more than an error in judgment. *Johnson v. City of Richardson,* 206 S.W.2d 98, 100 (Tex.Civ. App.—Dallas 1947, no writ). In reviewing the trial court's determination of a matter within its discretion, the appellate court cannot simply substitute its own judgment for that of the trial court. *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). The test is whether the trial court's decision was arbitrary or unreasonable. *Landry v. Traveler's Insurance Co.,* 458 S.W.2d 649, 651 (Tex.1970).

Application of this test to the evidence in this case has convinced us that no abuse of discretion has been shown. The child was adopted in infancy by Burt and Bettysu Northcutt, who named her Betsy Lynn Northcutt. When Betsy was seven years old, Burt and Bettysu were divorced. Bettysu was appointed managing conservator and Burt was given visitation privileges. The couple also had a son in his late teens, who made his home with Bettysu and Betsy. In September 1974 Bettysu married Edward Bennett, who had become well-acquainted with Betsy. Immediately on learning of the marriage, Betsy announced that her name, also, would be Bennett. Although her stepfather told her that she would have to continue to bear the Northcutt name, she told her teachers and others at her school that her name should be changed to Bennett. Whenever her teachers would call her Northcutt, she would request that it be changed to Bennett, and when they made the correction, she would smile and appear pleased. She signed all her school papers "Betsy Bennett," and she was known by that name at her church and among her friends.

The evidence shows that Betsy's preference for the name Bennett has never wavered and has continued for almost two years. Her pediatrician for more than five years testified that he had discussed the matter with her privately and that in his opinion the name was so important to her that it would be detrimental for her to use the name Northcutt. A graduate psychologist testified that he had interviewed her and that in his opinion she would experience considerable anxiety if she is not allowed to change her name.

Appellee offered the testimony of two experts who answered hypothetical questions, but neither had ever talked with Betsy, and their opinions were given without knowledge that she had used the name Bennett consistently for almost two years. Both admitted that if the child had a strong identification with the new name, as the evidence undoubtedly shows, she could experience confusion and anxiety if she were required to resume the old name. No other evidence was offered that tends to support the trial court's presumed finding that the change would not be in Betsy's best interest. Consequently, the evidence would be easily sufficient to support an order granting the change, if the court had so decided. *Newman v. King,* 433 S.W.2d 420 (Tex. 1968).

Nevertheless, it does not follow that the trial judge abused her discretion in denying the change. Courts may take judicial notice of well-known facts concerning the habits and activities of human beings. 1 C. McCormick & R. Ray, Texas Evidence § 197 (2d ed. 1956). Among these well-known facts is the practically universal custom of giving a child the father's surname. Equally well known is the fact that a surname provides a means of identifying the child with the father's family. For reasons such as these, apparently, the supreme court has recognized the general rule that courts will exercise the power to change a child's name reluctantly and only when the substantial welfare of the child requires it. *Newman v. King,* 433 S.W.2d 420, 423 (Tex. 1968).

In the light of this recognized judicial reluctance to change the child's name,

the trial judge, even in the absence of explicit evidence, could reasonably draw the inference that the Northcutt name was a benefit to the child that would be in her best interest to keep, notwithstanding her disposition to discard it. Burt Northcutt could not be expected to present evidence to the effect that the change would impair his love for his daughter or that it would weaken his sense of obligation to take care of her. We hold that he had no such burden. The burden, rather was on the applicant to establish that the change would be for the best interest of the child, and the absence of evidence to the contrary does not establish abuse of the trial court's discretion. *Plass v. Leithold,* 381 S.W.2d 580, 581 (Tex.Civ. App.—Dallas 1964, no writ).

The evidence in the present case, one-sided though it is, establishes only that the child herself has a strong preference for the change of name and will experience emotional distress if her preference is denied. No other evidence was presented indicating that the change would be of any greater advantage to her than to any other child whose mother has divorced and remarried. The question then comes to whether the trial court acted arbitrarily or unreasonably in failing to give controlling weight to her preference and to her probable reactions on being denied that preference. We conclude that no arbitrary or unreasonable action is shown. In determining the best interest of the child, the trial judge has broad discretion because she has the opportunity to observe and evaluate the personalities involved, weigh the credibility of their testimony and assess the physical, mental, moral and emotional needs of the child. *Mumma v. Aguirre,* 364 S.W.2d 220, 223 (Tex.1963). In exercising that discretion, the child's preference is only one of the factors to be considered.

Although we have found no decision concerning the weight to be given a child's preference in a proceeding for change of name, analogies may be found in other cases in which the children's best interest was the controlling issues and the children were considerably older than the

child in this case. In a custody proceeding, the preference of the child, if of sufficient age to judge for himself, may be weighed along with other evidence, but it is not controlling. *Dunn v. Jackson,* 231 S.W. 351, 353 (Tex.Comm.App.1921, holding approved) (14 years); *Goodale v. Goodale,* 497 S.W.2d 116, 120 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (12 years); *Brooks v. Brooks,* 480 S.W.2d 463, 465 (Tex. Civ.App.—Eastland 1972, no writ) (over 14 years); *Lewis v. Cushing,* 444 S.W.2d 815, 817 (Tex.Civ.App.—Beaumont 1969, no writ) (12 years). Neither is the child's preference controlling with respect to visitation. *Walker v. Showalter,* 503 S.W.2d 624, 626 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ) (13 years). We note also that Tex. Family Code Ann. § 14.07 (Vernon 1975) provides that a child more than fourteen years of age may choose the managing conservator, but even for a child of that age the choice is "subject to the approval of the court." If the preferences of older children do not control determinations of best interest in matters of custody and visitation, then, it seems to us that neither should it control in an application for change of name when the child is as young as nine.

We recognize that in the cases cited the children's preferences were not the only evidence in the record, but were weighed against other evidence tending to support different conclusions. Those decisions bear on our question, however, since the courts appear to have regarded a child's preference as no stronger than opinion evidence, which the trial judge is not required to accept as conclusive on the issue of the child's best interest, even if no contrary evidence is offered. *Cf. Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 829 (Tex. 1970). The trial judge may evaluate that preference, like any other opinion, in the light of the child's age, personality, and general situation. In this case the judge was presumably conscious of the value of the father's care, counsel, protection and support and sensitive to any influence that might deprive Betsy of the full benefit of her relationship to him and his family. Evi-

dently the judge was not persuaded that the change was in Betsy's best interest, and we cannot say that this conclusion was arbitrary or unreasonable.

Similar reasoning applies to appellant's contention that denial of the application for change of name was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and unfair. The child's best interest is a fact issue to be determined from the evidence, but it is a matter of inference and opinion rather than simple objective fact. The trial judge had the responsibility to evaluate the opinions expressed by the expert witnesses and to weigh the strength of Betsy's preference and emotional reactions. Our examination of this record has not convinced us that the judge's conclusion was so clearly contrary to the great weight and preponderance of the evidence as to be manifestly unjust and unfair.

■ In her third point appellant complains of the court sustaining appellee's objection to a hypothetical question directed to appellee's witness Dr. Entzminger on cross-examination. We find this error, if any, to be harmless, since Dr. Entzminger's testimony as a whole clearly shows that he did not consider a change of name detrimental under the circumstances stated in the hypothetical question. Consequently, his answer to this question would only have been cumulative of his other testimony.

■ Appellant's fourth point complains of the trial court's striking certain testimony of appellee's witness Campbell on cross-examination, which was offered for impeachment. This ruling also was harmless. Campbell's testimony was weak at best, because he had not seen Betsy since she was quite small and only testified generally that a change of name "could be detrimental" to Betsy because a child finds an identity in a name and the problem of identity "can be increased by a change of name." This testimony falls short of an opinion that the change would actually be detrimental to Betsy. Whatever weight this testimony might have had was effectively removed by Campbell's own testimony on cross-examination that if the child had used the Bennett name for almost two years, whether she would be confused to change it back to Northcutt "would depend on whether the child actually integrated and moved to that identity." Consequently, we cannot assume that exclusion of the impeaching testimony, which, of course, the judge had already heard, was an error that probably influenced the judgment.

■ In her fifth point appellant contends that the judge erred in failing to file findings of fact and conclusions of law, after appellant had made a proper request for such findings under Tex.R.Civ.P. 296 and had given the judge a timely reminder of this request, as provided by Tex.R.Civ.P. 297. We find that this error, also, was harmless. Only one issue of fact was presented for decision by the trial judge, namely, whether the change of name was in the best interest of the child. An express finding on this issue could have made no difference on this appeal, and other findings would be merely evidentiary. The judgment necessarily implies a finding that the change was not in the child's best interest. Appellant challenges that finding in her first and second points, and she has not made any showing of how the trial court's failure to file findings and conclusions has prevented her from making a proper presentation of her case to this court. Consequently, under Tex.R.Civ.P. 434, the error is harmless. *See Wagner v. Riske,* 142 Tex. 337, 178 S.W.2d 117 (1944); *McClendon v. McClendon,* 289 S.W.2d 640, 644 (Tex.Civ. App.—Fort Worth 1956, no writ); *Cantu v. Cantu,* 253 S.W.2d 957, 958 (Tex.Civ.App.— San Antonio 1952, no writ).

Affirmed.