[No. 8011–1–III.  Division Three.  December 1, 1987.]

THE STATE OF WASHINGTON, *on the Relation of Clint William LeDuc,* ET AL, *Respondent,* v. WALTER NAPIER, *Appellant.*

CONNIE LEDUC, *Respondent,* v. WALTER NAPIER, *Appellant.*

*Charles Barr,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Sharon Brown, Assistant,* for respondent.

GREEN, J.—Walter Napier appeals an order denying his motion to quash a Department of Social and Health Services (DSHS) enforcement order to collect certain moneys and denying his motion to vacate orders entered June 21, 1984,[1] and February 4, 1985, relating to paternity, support and other costs.

On September 1, 1983, Connie R. LeDuc, an unmarried pregnant woman, assigned her right to child support upon the birth of her unborn child to the State of Washington as a condition of receiving public assistance. Thereafter, on September 12 she commenced a paternity and custody action alleging Mr. Napier was the father. On January 10, 1984, Connie LeDuc gave birth to Clint William LeDuc. On January 19, the State commenced a paternity action alleging Mr. Napier was the father of the child and, on the same day, the affidavit of Mr. Napier was filed acknowledging paternity. The State, the mother and the child were named as parties to this action. An order was entered in the state action on January 30 appointing Linda Waite guardian ad *litem* for the child. On February 14 the two paternity proceedings were consolidated. On June 21 a stipulation and

---

[1]The stipulation and order was signed by the judge on June 14, 1984, but it was not filed with the clerk of the superior court until June 21, 1984.

order was entered declaring Mr. Napier the natural father of the child and ordering him to pay $300 per month child support. The guardian ad litem submitted her report on July 11, 1984, with recommendations consistent with the stipulation and order.

On February 4, 1985, an agreed order of addendum to the June 21, 1984 judgment of paternity and order for support was entered. This order recites: "Come Now the Plaintiff . . . being represented by and through both the Franklin County Prosecuting Attorney, C. J. Rabideau, and Patrick T. Roach . . . retained counsel; the Defendant [Walter Napier] being represented by and through Daniel M. Arnold, Attorney at Law . . ." This agreed judgment and order was approved by all counsel *except* Mr. Arnold.

On March 11, 1985, an order to show cause why Mr. Napier should not be held in contempt for failure to comply with the June 21, 1984 and February 4, 1985 orders was filed by the State. Negotiations were conducted between counsel regarding the viability of the orders and the hearing date on the order to show cause was apparently continued or stricken. The record is unclear in this regard. On May 6, 1986, the Office of Support Enforcement for DSHS entered an order to withhold and deliver on all of Mr. Napier's bank accounts. Mr. Napier then moved to quash and vacate the DSHS enforcement order and the June 21 and February 4 orders adjudicating paternity and his liability for support and costs. On July 8, 1986, the court denied both motions finding the previous orders valid and enforceable. Mr. Napier appeals.

First, Mr. Napier contends (1) the June 21, 1984 order is void because the child was not named as a party to the action and no guardian ad litem was appointed to represent him; (2) since the prosecutor was not involved in this order, RCW 74.20.310 does not apply; and (3) the order is an incomplete adjudication of multiple claims. We do not find these contentions meritorious.

The Uniform Parentage Act under which paternity actions are brought provides in RCW 26.26.090(1):

The child shall be made a party to the action. If the child is a minor, the child shall be represented by the child's general guardian or a guardian ad litem appointed by the court subject to RCW 74.20.310. The child's mother or father may not represent the child as guardian or otherwise.

However, RCW 74.20.310 provides:

The provisions of RCW 26.26.090 requiring appointment of a general guardian or guardian ad litem to represent the child in an action brought to determine the parent and child relationship do not apply to actions brought under chapter 26.26 RCW if:

. . .

(2) The action is brought by any prosecuting attorney on behalf of the state, the child, or the natural mother when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary.

Although a guardian ad litem was not necessary in the State's action, RCW 74.20.310,[2] a guardian ad litem was in fact appointed. When the mother's action and the State's action were consolidated, the two actions merged. *See Jeffery v. Weintraub*, 32 Wn. App. 536, 547, 648 P.2d 914 (1982). Thus, even though in the action brought by Ms. LeDuc, the child was not named as a party nor a guardian ad litem appointed, these problems were resolved by the

---

[2]*State v. Santos*, 104 Wn.2d 142, 702 P.2d 1179 (1985) and *Daves v. Nastos*, 105 Wn.2d 24, 711 P.2d 314 (1985) are distinguishable. The *Santos* court held at page 150 that appointment of a guardian ad litem is necessary where (1) there is no scientific proof of parentage, and (2) more than one potential father could have been identified with minimal investigation. *Santos* is distinguishable from the instant case: (1) in that case the mother was separated from her husband, and had sexual relations with Santos (the petitioner) and another man, and the parties had discussed the fact Mr. Santos was possibly not the father; (2) Mr. Santos was seeking to vacate the judgment and order of paternity on the ground he allegedly was not the father. Here, there has been no evidence of the possibility of other potential fathers and Mr. Napier does not deny or allege he is not the father or that the stipulation of such is invalid for some reason. *Daves v. Nastos, supra,* involved an action brought *by the mother* to establish paternity and child support. In the instant case, the State brought the action.

consolidation.

In the absence of an assignment of error, we need not consider Mr. Napier's contention regarding a claimed CR 54(b) violation; nor has he cited any authority to support his 1-sentence argument on this point. RAP 10.3(a)(3), (5).

Second, Mr. Napier contends the court erred in denying his motion to quash the DSHS order to withhold and vacate the February 4, 1985 order and judgment. He argues this order and judgment was entered without compliance with the notice requirements of CR 54(f)(2) resulting in a violation of his due process rights and should be vacated. He also claims the February 4, 1985 order is void because allegedly there is no evidence the child, an indispensable party, was ever joined to the litigation pursuant to CR 19.

The latter argument must be rejected. The record shows the action was brought by the "State of Washington, ex rel., Clint William LeDuc, a minor, and Connie R. LeDuc" and that a guardian ad litem was appointed to represent the child's interest.

With respect to the contention concerning notice, CR 54(f)(2) provides:

> *Notice of Presentation.* No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment unless:
>
> . . .
> (B) Approval. Opposing counsel has approved in writing the entry of the proposed order or judgment or waived notice of presentation.

The record does not establish that Mr. Napier or his counsel were given any notice that the February 4 order was to be entered. The order was not approved by Mr. Napier or his counsel. The trial judge in upholding the February 4 order observed:

> Now, it's not possible for me to believe that Judge . . . entered this order with no notice whatsoever to this gentleman or his lawyer.
>
> In fact, it says Defendant being represented by and

through Dan Arnold. Am I supposed to believe Dan Arnold didn't know one thing about that and didn't have anything to do about it and it was signed and entered without any notice or knowledge by him?

■ Mr. Arnold may have had notice, but there is nothing in the record before this court to show that he did and he did not approve the order. The mere recitation in the order that Mr. Arnold represents Mr. Napier does not establish the required notice or his presence at the time the order was entered or his approval of the entry of the order. The order imposes substantial obligations on Mr. Napier above and beyond the support required by the June 21, 1984 order. Consequently, on the record before this court, we find the trial court erred when it refused to vacate the order entered on February 4, 1985. CR 54(f)(2).

Each party shall bear the costs of his own attorney fees.

Affirmed as to the order entered June 21, 1984; reversed without prejudice as to the order entered February 4, 1985. The denial of the motion to quash the DSHS enforcement order is affirmed as to those amounts resulting from the June 21, 1984 order, but reversed as to those amounts resulting from the February 4, 1985 order.

THOMPSON, A.C.J., and MUNSON, J., concur.

Reconsideration denied December 23, 1987.